# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# STATESBORO DIVISION

| | |
|---|---|
| COREY LEE HOLTON, | ) |
| Plaintiff, | ) |
| v. | ) CV417-199 |
| NANCY BERRYHILL, Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Corey Lee Holton seeks judicial review of the Social Security Administration (SSA)'s denial of his application for Supplemental Security Income (SSI) benefits.

## I. GOVERNING STANDARDS

In social security cases, courts

> . . . review the Commissioner's decision for substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quotation omitted). . . . "We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner." *Winschel*, 631 F.3d at 1178 (quotation and brackets omitted). "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation omitted).

*Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

The burden of proving disability lies with the claimant. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The ALJ applies

> . . . a five-step, "sequential" process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). If an ALJ finds a claimant disabled or not disabled at any given step, the ALJ does not go on to the next step. *Id*. § 404.1520(a)(4). At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. *Id*. § 404.1520(a)(4)(i). At the second step, the ALJ must determine whether the impairment or combination of impairments for which the claimant allegedly suffers is "severe." *Id*. § 404.1520(a)(4)(ii). At the third step, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. *Id*. § 404.1520(a)(4)(iii). If not, the ALJ must then determine at step four whether the claimant has the RFC[1] to perform her past relevant work. *Id*. § 404.1520(a)(4)(iv). If the claimant cannot perform her past relevant work, the ALJ must determine at step five whether the claimant can make an adjustment to other work, considering the claimant's RFC, age, education, and work experience. An ALJ may make this determination either by applying the Medical Vocational Guidelines or by obtaining the testimony of a [Vocational Expert (VE)].

*Stone v. Comm'r. of Soc. Sec. Admin.*, 596 F. App'x, 878, 879 (11th Cir.

---

[1] At steps four and five, the ALJ assesses the claimant's residual functional capacity (RFC) and ability to return to her past relevant work. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). RFC is what "an individual is still able to do despite the limitations caused by his or her impairments." *Id.* (citing 20 C.F.R. § 404.1545(a); *Moore v. Comm'r of Soc. Sec.*, 478 F. App'x 623, 624 (11th Cir. 2012). "The ALJ makes the RFC determination based on all relevant medical and other evidence presented. In relevant part, the RFC determination is used to decide whether the claimant can adjust to other work under the fifth step." *Jones v. Comm'r of Soc. Sec.*, 603 F. App'x 813, 818 (11th Cir. 2015) (quotes and cite omitted).

2015) (footnote added).

## II. BACKGROUND

Holton was 23 years old at the time of his application, has no past relevant work, and has only a limited education (10th grade). Tr. 28, 42. After a hearing, ALJ Richard Furcolo issued an unfavorable decision. Tr. 1-7, 28-44. He found that Holton's borderline intellectual functioning constituted a severe impairment but did not meet or medically equal a Listing. Tr. 30-34. Based on the evidence of record, the ALJ found that Holton retained the RFC for a full range of work at all exertional levels, except that

> he is limited to performing simple, routine, repetitive tasks. He could make only simple work-related decisions, and he could have only occasional contact with the public.

Tr. 35.

Plaintiff, he determined, had no past relevant work but could perform the requirements of work as a packager, assembler, and laundry worker, all unskilled work with an SVP[2] of 2. Tr. 73-74. Hence, Holton was not disabled. Tr. 42-43. Holton disagrees, arguing that the ALJ

---

[2] Specific Vocational Preparation (SVP) is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, App. C.

erred in determining he did not meet Listing 12.05B. Doc. 12.

## III. ANALYSIS

Plaintiff argues that the ALJ erred by finding his borderline intellectual functioning did not meet or equal Listing 12.05B. "Intellectual disability," as defined by Listing 12.05, "refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05. To qualify as intellectually disabled, a claimant's condition must satisfy this diagnostic definition and satisfy one of four criteria specified in subparts A through D of the Listing. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(A) (stating that an impairment must satisfy the diagnostic description and one of the four sets of criteria to qualify under Listing 12.05); *see also Perkins v. Comm'r Soc. Sec. Admin.*, 553 F. App'x 870, 872 (11th Cir. 2014); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).

Listing 12.05B's criteria is met when a claimant presents "a valid verbal, performance, or full scale IQ of 59 or less." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05. Thus, a claimant must show: (1) deficits in

4

adaptive functioning; (2) a qualifying IQ score; and (3) onset before age 22. *See Perkins*, 553 F. App'x at 873 (citing 20 C.F.R. pt. 404, subpt. P, app. 1, 12.05 and *Hodges v. Barnhart* 276 F.3d 1265, 1268-69 (11th Cir. 2001)). There is no dispute that Holton's intellectual deficits began prior to the age of 22. Docs. 12, 15, 18.

A sub-60 IQ score triggers a rebuttable presumption of intellectual disability. *Frame v. Comm'r of Soc. Sec.*, 596 F. App'x 908, 911 (11th Cir. 2015); *Hodges*, 276 F.3d at 1269; *Cody v. Colvin*, 2015 WL 5162280 at * 3 (S.D. Ga. Sept. 2, 2015); *see also* 20 C.F.R. Part 404, Subpart P, App'x 1 § 12.00 ("Standardized intelligence test results are essential to the adjudication of all cases of intellectual disability that are not covered under the provisions of 12.05A."); *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) ("a valid I.Q. score need not be conclusive of [intellectual disability] where the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior."); *Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir. 1986) ("[IQ] test results must be examined to assure consistency with daily activities and behavior"). In general, for an ALJ to discredit an IQ score, the evidence must "overwhelmingly

indicate[ ] that the claimant [is] not mentally retarded[3] and likely attempted to tailor results to effect a desired outcome." *Siron v. Comm'r. Soc. Sec. Admin.*, 556 F. App'x 797, 799 (11th Cir. 2014) (citing *Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir. 1986) and *Strunk v. Heckler*, 732 F.2d 1357, 1360 (7th Cir. 1984)).

The ALJ considered the severity of Holton's intellectual impairments at steps two and three of the sequential evaluation. Tr. 30-34. But the ALJ rejected three IQ scores as invalid, due to Holton's "lackluster performance" and "poor effort." Tr. 32; *see* tr. 451-58 (Dr. Hartzell's 2014 opinion that Holton's full-scale IQ score of 57 was not a valid estimate of his intellectual functioning, noting he made "little effort during the testing session" and gave "up easily on anything that presents him any difficulty"); tr. 460-65 (Dr. Hinchey's 2014 opinion that Holton's full-scale IQ score of 57 was not a valid estimate of his intellectual functioning because of "marked inconsistency overall in his presentation through past history and relatively normal scores in community use, self-

---

[3] Effective September 3, 2013, the term "mental retardation" was replaced with "intellectual disability" in the Listings. Change in Terminology; "Mental Retardation" to "Intellectual Disability", 78 Fed. Reg. 46499-01 (Aug. 1, 2013) (codified at 20 C.F.R. Parts 404 and 416).

6

care, and social functionality). The ALJ did not, however, address Holton's other two full scale IQ scores in the record while evaluating whether he met the requirements of Listing 12.50B. *See* tr. 32-34; tr. 541-50 (Dr. Fowler's 2001 opinion that Holton's full-scale IQ score was 52 and that he was compliant); tr. 551-57 (Dr. Bochner's 2005 opinion that Holton's full-scale IQ score was 54, that he was "mildly" mentally retarded, that he likely would have performed better had he taken his Ritalin, and that "there is a 95% probability that [Holton]'s true IQ score falls between 50 and 61" despite noting a flat affect, blank expression, and "lackluster" performance).

Indeed, the ALJ mentioned both Dr. Fowler and Bochner's assessments while discussing plaintiff's credibility, indicating he knew they were in the record. Tr. 36. The ALJ noted that Holton's concentration deficits in Dr. Bochner's assessment could be partially explained by his failure to take his Ritalin that day, and that his participation was again lackluster. *Id*. It is unclear, however, that the ALJ actually *rejected* or discredited Dr. Bochner's opinion or full-scale IQ assessment. And his opinion on Dr. Fowler is entirely secret. He never revisited either psychologist or their assessments. *See* tr. 32-42.

7

Meaning, at least one and — given the Court's reticence to resolve the ALJ's ambiguous credibility finding for Dr. Bochner — perhaps two valid full-scale IQ scores under 59 are contained in the record, unconsidered by the ALJ in support of plaintiff's claim.

The Commissioner encourages the Court to move to the third step of the Listing analysis, to evaluate whether plaintiff has demonstrated deficits in adaptive functioning. Doc. 15 at 7; *see also* tr. 37 (noting Dr. Hartzell and Hinchey's assessments reflected scores inconsistent with his adaptive functioning). As discussed above, an IQ score alone is not enough to meet Listing 12.05. 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(D)(6)(a); *Hickel v. Comm'r of Soc. Sec.*, 539 F. App'x 980, 983-84 (11th Cir. 2013) ("a valid I.Q. score need not be conclusive of mental retardation where the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior."). But the ALJ did not make any finding on Holton's adaptive functioning, tr. 32-34,[4] and the

---

[4] The ALJ did make some findings about plaintiff's abilities and activities. *See* tr. 33-34 (discussing plaintiff's activities of daily living, social functioning, and concentration, persistence, and pace in the context of his paragraph D analysis). While deficits in adaptive functioning involve a distillation of findings in those same categories, the ALJ's discussions of plaintiff's moderate restrictions in his activities of daily living, social functioning, or concentration, persistence, and pace cannot be relied on in place of any finding on his adaptive functioning (*see* tr. 33-34), as those terms are not interchangeable. *Compare* 20 C.F.R. Part 404, Subpt. P, App. 1, Listing

Court cannot make it for him. *Sprinkel v. Berryhill*, 2017 WL 4172501 at *6 (S.D. Ga. Aug. 28, 2017) ("the Court cannot now engage in an administrative review that was not done in the first instance at the administrative level, but rather must examine the administrative decision as delivered."). The case must be remanded for reconsideration of Listing 12.05B.

## IV. CONCLUSION

In conclusion, the ALJ's finding that Holton did not meet or medically equal Listing 12.05B is not supported by substantial evidence within the record. For the reasons set forth above, this action should be

---

12.05H(3)(a) ("Adaptive functioning refers to how you learn and use conceptual, social, and practical skills in dealing with common life demands. It is your typical functioning at home and in the community, alone or among others."); *Jones v. Soc. Sec. Comm'r*, 695 F. App'x 507, 509 n. 3 (11th Cir. 2017) ("Although the Social Security regulations do not define 'deficits in adaptive functioning,' the Diagnostic and Statistical Manual of Mental Disorders states that adaptive functioning refers 'to how well a person meets standards of personal independence and social responsibility, in comparison to others of similar age and sociocultural background. Adaptive functioning involves adaptive reasoning in three domains: conceptual, social, and practical.' [DSM IV]."), *with* 20 C.F.R. Part 404, Subpart P, App. 1, Listing 12.00(C) ("Activities of daily living include cleaning, shopping, cooking, and caring appropriately for personal grooming and hygiene; social functioning refers to the capacity to interact effectively and on a sustained basis with others; concentration persistence, or pace refers to the ability to focus attention sufficiently long to allow for the completion of tasks commonly found in work settings; and episodes of decompensation are temporary exacerbations in symptoms accompanied by a loss of adaptive functioning, which makes it difficult to perform activities of daily living, maintain social relationships, and sustain concentration, persistence, or pace."), quoted in *Brown v. Comm'r of Soc. Sec.*, 2018 WL 1916624 at *2 (N.D. Ga. Mar. 23, 2018).

**REMANDED** to the Social Security Administration for further proceedings under 42 U.S.C. § 405(g).

This report and recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Given the lapse in government appropriations, this matter has been stayed by the district judge. Doc. 19. Therefore, **within 14 days of the lifting of the administrative stay** in this case, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendation pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonett v. V.A. Leasing Corp.*, 648

F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. U.S.*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED**, this   15th   day of January, 2019.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA